And we will hear argument next in General Metals v. Bean Environmental Good morning, Your Honors. May it please the Court, I'm Ken Masters for the appellate's Mr. Masters? Counsel, I had a kind of a fundamental problem and I want you to help me with it. Yes, Your Honor. It seemed to me that Bean hired itself out as an expert company for this sort of remediation. It put in the contract that it had inspected the site and it had a right to inspect the site. As far as I can tell, neither General Metals nor Bean knew about the asbestos. And Bean argues General Metals should have figured out there was asbestos and told Bean. But it looks to me like nobody discovered the asbestos until Bean had already been fired. So the asbestos had nothing to do with Bean's delay. And what's more, Bean was at least as capable as General Metals of finding out about the asbestos. For one thing, their construction shack was 100 feet away from the place where they were doing the asbestos remediation. And their foreman or project manager could have gone over and asked, hey, what are you guys doing? And for another, they had the right and duty under the contract to inspect the site. I don't get why General Metals is doing anything wrong and not telling Bean about the asbestos General Metals doesn't know about, or even what the asbestos has to do with anything. The asbestos has to do with the disclosure provision in the contract that required HHCG to disclose any asbestos or any contaminants at all of which it knew or had reason to suspect at the project site. The evidence that HHCG knew. Let's see, let's look at it together as we talk. Where is it in the excerpt? The contract provision that I'm talking about, Your Honor, is at ER 176. And the contract required HHCG to disclose any contaminants it knew about or had reason even to suspect. Now, the evidence that it knew or had reason to suspect is very strong. First of all, we have the e-mail from April of 2003. Now, this is before the contract is signed, where the director of this project, on behalf of HHCG, says in an e-mail that we've gone down and walked by the water and we've found these Gibbs cells, which are asbestos-lined, in the fill right along the mudflats of the water. And so there was evidence there that there was asbestos at the project site. Second, we have the e-mail in 2000. Does the jury verdict in this case mean that the jury concluded that General Metals didn't know about the asbestos and didn't have reason to know? No, Your Honor. It can't necessarily mean that. Remember that when the judge instructed. It was put in issue. And it's a general verdict form, right? The jury form that was actually given was a general verdict form. And we asked for a special verdict on this question. You got an instruction, didn't you? We did not get the instruction that we asked for, no, Your Honor. Well, I know you didn't get the one you asked for, but you got one, didn't you? We got an instruction on misrepresentation, negligent misrepresentation and fraud. Those two theories would have required us to prove at the very least damages, which is not an element of our material misrepresentation or material inducement claim. Under Washington law, we don't have to establish damages. The jury could have found, as HHC argued to the jury, that because, as Your Honor noted, we were off the site when the asbestos was finally disclosed, that we weren't harmed by that nondisclosure. We had already cleaned the bottom of this passageway to 80 percent and left. And we weren't required to do asbestos remediation because they didn't disclose it prior. Therefore, the jury could have agreed that as to negligent misrepresentation and fraud, we couldn't establish damages. So what you're doing is saying, yeah, we were fired before we discovered the asbestos, before anybody knew about it. And that means that the asbestos didn't cause us to delay, but it also means we've got this misrepresentation that we can use to rescind. That's correct. Let me ask you about rescission. As I recall, what rescission does is it lets you walk away from a contract without performing, rather than get damages from the party that made you a promise. But you didn't walk away. You got fired. Well, exactly, Your Honor. But again the key distinction here is between what happened before and what happened before we contract, the inducement before we contract, when HHC knew or had reason to know that there was asbestos at the site and a breach afterwards, after the contract was formed. All that the jury was told was that they could decide whether HHCG breached the contract that already existed based on this failure to disclose. And that is a valid theory, negligent misrepresentation or fraud is one of the theories or two of the theories that were in the case. And those were so they were properly instructed and we had no objection to that. But the key issue on those, which the trial judge found twice. He found it on summary judgment. He denied summary judgment to HHC. And on directed verdict he said the key issue is would HHCG or I'm sorry, would Bean have signed this contract if HHCG had disclosed what it knew or had reason to know. That's the key question. The difficulty I've got with that is I hear you. Now, and there's clearly a Washington theory of material misrepresentation that's different from fraudulent or negligent misrepresentation. But when you got down to it, the district court was never clearly told, look, you're making a big mistake here. You have, you've forgotten our material misrepresentation theory. You've substituted Instruction 11 for Instruction 32. And we object on that basis. That doesn't appear in the record anywhere. It does, Your Honor. It doesn't. It's at ER 124. We clearly stated that you, we object to this jury directed verdict form. Oh, I'm sorry. You're talking about the Instruction 11 and 32. Yes, I am. That's correct. We did not object to that instruction. Okay. Since you don't have an objection preserved to the figure to give Instruction 32, the special verdict form, excuse me, it's not a special verdict form, but the question you wanted included on the general verdict form makes no sense. It's unhinged to any instruction about how the jury could have gone about finding material misrepresentation. Yes, Your Honor. And that's why I don't get where you've got any appeal preserved. And I recognize you weren't trial counsel. That is because, Your Honor, that the judge clearly told us, Judge Layton clearly told us that he was going to withhold the legal decision on rescission. So we never asked the judge for a legal decision. We did not, because in the judge's ruling at page 91 on this, of the ERs, he said I gave these issues to the jury. He believes he did. But he didn't. So what I'm saying is he didn't because he didn't give your Instruction 32, and that's not preserved. Failing to give the ask the questions that you wanted included can't possibly be error, because there's no instruction that goes along with them to tell the jury what they were supposed to do in order to find material misrepresentation. Those elements are obviously different from what they'd already been instructed on with respect to fraud or negligent misrepresentation, as you point out. And three, the Court was never actually asked, based upon its assessment of the evidence, to rescind the contract. So for all three reasons, I don't – I just don't understand what the appeal proceeds on, what the feet are. Your Honor, the one of those three things, the one thing I can clearly disagree with is that the judge would have instructed the jury on a legal theory that he had reserved to himself. He said he was going to decide rescission. And what we told the judge was, under the law of Washington, you may rescind based on a material nondisclosure. And the only way you're going to know what the jury decides on that, because the key thing is he's giving that issue. He could have gone in and inspected the site, discovered the asbestos, and said conditions on the site are a lot worse than what we planned for when we entered into the contract, so we rescind. And we'll each walk away, and you pay our expenses up to this point. But that didn't happen. There was a key fact that they knew or had reason to know that we didn't know, and that was the pool that was near the waterway, that when it was raining, that they washed these Gibbs cells into a pool that was about 300 feet near the waterway. Let's assume that. You still did not take advantage of your opportunity to rescind. Well, we didn't know that. That's a fact we never knew until we were gone from the site. Had we known that, and had we seen this 2003 email, or had we been told anything, that under the contract they were required to tell us that they had reason to suspect asbestos in the waterway, then we might have rescinded the contract. We might have been able to walk away. But HHCG itself argued, of course, that it didn't have reason to know. The judge said that one of the things that Bean had to prove was that general metals induced Bean to enter into the contract through negligent misrepresentation or fraud. So the jury has to have decided there was no negligent misrepresentation or fraud. That's correct. For the innocent misrepresentation, did you object to this subpart C of the instruction or ask for different language in response to the judge's proposed instruction? We did not object to the instruction because it is correct. It is a correct statement of the law, a negligent misrepresentation and fraud. We had no duty to object to a correct instruction. What we objected to was that the judge will not know how the jury is resolving this question. There's no case law anywhere in the country that we've been able to locate that says a judge can give a factual question to the jury on the one hand and also reserve it to himself on rescission on the other without asking the jury what their answer to the question is. Yes, but the answer to the question is meaningless unless the jury is told on what It's not meaningless to the judge. And the facts are how they make a finding. Sure it is, because the jury should have been told, just like your instruction told them, that it had to find reasonable, I've forgotten exactly what you said, it had to find reasonable reliance and that you did not have to find a fraud or negligence. The judge clearly reserved for himself the decision on rescission. That was in his, that was within his power. Sure, but you never asked. That's because he said he had given the question, the factual question for the jury and we don't know what the jury's answer to that question was. There's no way to know that. I'm missing some connection here. I think you conceded, you didn't ask the judge to ask the jury, to tell the jury that if there was an innocent misrepresentation that was material, that that, too, could provide a defense for being. That's correct, Your Honor. We didn't ask the jury to make that decision because the judge was going to make that decision. But the judge needed to know whether the jury found the key question. That's why we submitted a jury instruction, Your Honor, but the judge stood by his decision. He said, I am going to decide the rescission question. And so we said, Your Honor, you've got to ask the jury what their answer to this factual question is in order to decide the rescission question. That's what I missed. What's the excerpt's cite on that? 124. And we both cited to the court that, we said to the court that we object to the jury instruction because, I'm quoting, you did not allow the jury to make a finding of a material misrepresentation justifying rescission. And we're objecting to the verdict form. That's correct, Your Honor. And we're, under the restatement and Washington case law, the contract is voidable if there is a material misrepresentation. Counsel, you're down about a minute and a half. You may reserve or you may. Thank you, Your Honor. We'll hear from General Metals, Ms. Spillane. Ms. Spillane. Ms. Spillane. Yes, thank you. Good morning. I think that funding. Would you introduce yourself for the record, please? Yes, I'm sorry. I'm Mary Spillane and I represent General Metals of Tacoma. At counsel table with me is Marisa Bovond, who represents Parcoma. Very good. Could you talk a little louder? It's hard to hear. I'm sorry. Certainly. I think the fundamental problem in this case is that what Bean is asking is for a new contract based on an innocent misrepresentation, a theory that it never pled and a theory that it never presented to the trial court. What Bean pleaded and argued below was that HHCG breached the contract, committed fraud or committed negligent misrepresentation because of its promise in the contract that it had fully disclosed what it knew or had reason to suspect. What do you make of the argument that you just heard that Bean did raise innocent misrepresentation and the judge insisted upon his deciding it himself and that's why it wasn't given to the jury? I absolutely disagree with that argument. Okay. Could you refer us to something in the excerpt? It's going to be all negative. There is nowhere in the record, in the transcript, that they even referenced innocent misrepresentation. Well, that's not, I mean, that's not. In the transcript, they didn't. They didn't say, Your Honor, we're looking at innocent misrepresentation. Wait a minute. First of all, instruction 32, which they proposed, did reference material non-negligent misrepresentation. Not really, because you have to look at what they claimed the misrepresentation was even in that instruction. It wasn't acknowledged in Colloquy that it wasn't forgetting the residual material misrepresentation theory, and then proceeded to forget it. So while I don't believe that the issue was necessarily preserved, it's kind of odd as it went down, because there is no indication, speaking of things that are missing in the record, there is no indication at all of what the district court did with that. It just kind of ignored it. And, you know, an argument could be made, but wasn't, that that triggers the, that part of the rule, D-1B. But the reason I don't think it does in the context of this case is if you look at instruction number 32 proposed, which is at ER 38, the underlying premise of the instruction is the factual basis for all of their claims regarding failure to disclose. And that's that HHCG made a false representation when it represented to BEAM that it fully disclosed any information that it knew or had reason to suspect concerning the existence of asbestos contamination at the site. That was the contractual duty. The contractual duty was delimited to that, so that it wouldn't admit of a non-negligent misrepresentation or an innocent one. There was no duty to disclose anything other than what they knew or had reason to suspect. And that's really what distinguishes also this case. In other words, that excludes innocent representation per se? I believe it does, because the only obligation they have to disclose regarding contaminants is what they knew or had reason to suspect in the way of contaminants in the waterway. But that's subsection, subsection 3 and 4. But it still has to reference back to the representation that's at issue. And that representation is in 1. So you start with what they had to represent, and then you move from there. And I think that's really what distinguishes this case from the other innocent misrepresentation cases that BEAM cites. And that's in none of those cases did the contract spell out what the rights and obligations were with respect to disclosure. None of those cases said in this contract what you have to disclose is limited to what you know or have reason to suspect, which is in essence the negligent standard. Could you help me some on the rescission? I keep having trouble with the theory, because rescission is usually used as a justification for quantum Merowith damages where there has not been performance. And here, there was performance until the deadline for performance had ended, and then BEAM got fired. That's correct. I don't quite understand how the rescission theory under Washington law fits in in those facts. And I don't really think it does fit well here, because, one, BEAM did know about the asbestos remediation that was taking place on the shoreline. And if it knew that, and that was the reason people should have had reason to suspect contamination in the waterway, then BEAM had to rescind at the time, because the law is fairly clear that you can't – that you waive your right of rescission if you don't exercise it promptly. You can't take the benefits of the contract. You can't perform the contract and then decide to rescind based on anything that you had knowledge of. Now, what about Mr. Master's point, which he urged frequently during his presentation, that they never knew? The record is absolutely contrary to that. There was an email from their person on the site to the home office that flat-out said – and it showed their knowledge of the asbestos remediation that was taking place on the shoreline before they ever began to start dredging. Also, it was all encompassed in yellow asbestos tape, and their trailer was 100 feet or 100 yards away from that. They clearly knew. There's no question that they knew that asbestos remediation was taking place on the shoreline. What people didn't know was that there had been any asbestos contamination in the sediments itself. And one thing that BEAM says in its reply brief is it doesn't matter whether there was asbestos in the waterway as long as there was asbestos on the shoreline that you knew about. Well, that's not true, because if you go and you look at everything they argued from opening statement through every discussion they had with the court relating to their negligent or to their misrepresentation claim, it was always premised on you failed to disclose asbestos in the sediments that BEAM was to dredge or in the waterway. Their claim wasn't based on asbestos on the shoreline ultimately. Did they ask for jury instruction as laying out the rescission theory based on innocent material misrepresentation? Again, the only instruction that they proposed on that was proposed instruction number 32. Now, 32, it begins by talking about fraudulent inducement. Correct. And then it says, I believe that's correct. That's the only place. And, again, even that needs to be read in the context of what is the representation that was being claimed. And that related to I'm sorry. Even that part of the instruction has to be read in the context of what the claim of a misrepresentation was and that related to what HHCG knew or had reason to suspect in the way of contamination. And, again, under BEAM's theory, in the sediments BEAM was to dredge. I think ultimately really one of the bottom Can you help me on something else? Of course. When I read the contract, I noticed there was a section that said that BELL has visited or BELL-C, I think that's BEAM, has visited the site and become familiar with and is satisfied as to the general local site conditions that may affect cost, progress, performance, or furnishing of the remediation. Article 11.01. That's correct. Was there any evidence presented to the jury regarding a site visit prior to signing? Not that I'm recalling off the top of my head. I don't recall that they really addressed what all they did in looking over the site ahead of time. So this representation by BEAM was true? We – I don't think that we argued that it was an untrue representation. We never made that argument. There was no evidence. I'm thinking if there could have been evidence that they visited and saw the asbestos remediation tape in the site 100 feet away. There was evidence of that, yes. Before they entered into the contract? Before they actually began doing any work under the contract, before they began dredging. I have to confess, I'm a little lost with all this talk on the merits. I thought the only issue on appeal was whether the district court goofed by not granting a new trial on account of the fact that it didn't give the requested questions in the general verdict. I mean, that's the issue. Right. So never mind all this other stuff. Okay. Why is – why does that not compel revert? All right. Several things. First of all, they didn't ask for the theory that they are advancing now. I couldn't hear some words. They didn't ask for the theory that they are advancing now. They didn't accept the theory to give the fraudulent inducement instruction that they proposed. They – the questions that they proposed, both in their original proposed verdict form and in their revised proposed verdict form, dealt with fraudulent inducement, and yet there was nothing from which the jury would know what that meant if those questions had been placed on the verdict form. And I think ultimately, most importantly, and what we argued extensively – I mean, there was nothing in the record. There was no evidence adduced. Is that what you're saying? No. What I'm saying is if you ask the jury, who do you find for on a fraudulent inducement claim, without telling them what fraudulent inducement means, how is the jury supposed to answer the question? Definitional. All right. The jury did not know what material misrepresentation – Or innocent misrepresentation. Correct. I mean, the innocent material misrepresentation theory. The jury had no instruction on that. Right. And the jury did have an instruction on fraud. So, yes, it had some information with respect to fraudulent inducement. But I think ultimately, too, if you just step back and you think about what all of the claims were, the claim for breach of contract was you didn't disclose asbestos and you knew or suspect – had reason to suspect that it was in the waterway. The claim for fraud was the same thing. The claim for negligent misrepresentation was based on that same predicate fact. Yeah. But the trouble is that the elements are different, because in an innocent misrepresentation theory, you don't have to show damage. You do on the others. So, in other words, the jury could have found that they weren't damaged, but that doesn't necessarily foreclose finding that there was an inducing material misrepresentation. And, again, I don't think that's quite accurate, because if you go back to the burden of proof instruction, it also, before they could find for HHCG on the breach of contract claim, which included the same predicate fact of you failed to disclose asbestos when you allegedly knew or had reason to suspect its presence, the jury had to find that HHCG performed all of its obligations under the – under the contract. And they argued, being argued repeatedly to that jury, that we breached the contract by failing to disclose asbestos when we knew or suspected it in the waterway. The jury had to, in finding for us, conclude that we performed all of our obligations under the contract and – which included fulfilling our duty to disclose known or suspected contaminants. And we clearly didn't disclose asbestos. We don't dispute that we did not disclose asbestos in the waterway. So the predicate fact was decided by this jury. It was able, under the court's instructions, under the theories of the case that were actually presented by me, to address that factual issue, and it necessarily had to conclude that we disclosed what we needed to disclose under the contract. If there are no further questions, thank you. Thank you, counsel. We'll hear from Mr. Masters. You have some reserved time. Thank you, Judge Rimer. Let me try to convince you that we raised it. At CR 296, this is the joint statement of disputed instructions. That's the court's record, 296. It's not in the excerpt of record. I have the excerpt. It's at 296 in the clerk's record. It's not in the ours. You didn't put it in the excerpt? I don't believe it is, Your Honor. What are we talking about? That is – no, I'm sorry. I'm incorrect. That's during Instruction 32. So that isn't in the ours. I am in Instruction 32. We cite the restatement. And, Your Honor, that instruction is the restatement that has been adopted by Washington. Those – the language in that, it comes directly from that restatement. I don't disagree with that. Now, let me tell you some more places we preserved it. We did not – the team did not accept the favor to give this instruction and tell the judge, hold on a second, we don't have a problem with 11. So far as it goes. But in addition to 11, you need to give 32. We didn't believe that, Your Honor. We believed it was fine for Judge Layton. If he insisted on reserving the decision on rescission, it's an equitable decision. So he can reserve it. So we don't want to instruct the jury on it. Okay. If that's true, then it necessarily follows that you are not entitled to have a question asked to the jury in its general verdict form because that wasn't up to the jury. It was up to the judge. Your Honor, I don't believe there's any law that says you can't ask a question that's necessary for the judge to be able to make its equitable ruling. He has to know what the jury – this question went to the jury, and he has to be able to know whether – how they answered it. Okay. Can you just tell me in 25 words or less how the jury would know how to answer that question without an umbrella instruction? There was a massive amount of evidence in this trial. I'm not talking about the evidence. Well, it's a factual finding, Your Honor, that all they need is facts in order to answer a factual finding. Okay. Thank you, Your Honors. We ask you to reverse. Thank you, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Rymer, Kleinfeld